UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DENISE RATHMAN,                    Case No. 17-CV-1581 (PJS/LIB)

           Plaintiff,

v.

                                          ORDER

UNION SECURITY INSURANCE
COMPANY d/b/a ASSURANT
EMPLOYEE BENEFITS,

           Defendant.

         Paul A. Sortland, SORTLAND LAW OFFICE, PLLC, for plaintiff.

         Robyn L. Anderson and S. Russell Headrick, LATHROP GAGE LLP, and Terrance J. Wagener, MESSERLI & KRAMER, for defendant.

         Richard Rathman participated in an insurance plan that was established by his employer, administered and insured by defendant Union Security Insurance Company ("Union Security"), and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The plan provided benefits to Richard's wife (plaintiff Denise Rathman) in the event of Richard's accidental death. But after Richard died from injuries sustained in a snowmobile accident, Union Security denied Denise's claim for accidental-death benefits, citing an exclusion for death arising from "intoxication while operating a motor vehicle."

Denise twice appealed Union Security's denial of her claim. She conceded that Richard was intoxicated at the time of the accident, but she argued that a snowmobile is not a "motor vehicle" and therefore the exclusion did not apply. Union Security continued to maintain that a snowmobile is a "motor vehicle" and denied Denise's appeals. Denise then brought this lawsuit to challenge Union Security's decision. Both parties now move for summary judgment.

When an ERISA plan gives the plan administrator "discretion to interpret the plan and . . . determine eligibility for benefits"—as does the ERISA plan that covered Richard—the Court must uphold the plan administrator's decision as long "as it is based on a reasonable interpretation of the [plan]." *Donaldson v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 863 F.3d 1036, 1039 (8th Cir. 2017) (citation omitted). Union Security's interpretation of the phrase "motor vehicle" to include a snowmobile is reasonable. Therefore, the Court grants Union Security's motion for summary judgment, denies Denise's motion for summary judgment, and dismisses this action.

I. BACKGROUND

At the time of his death, Richard was participating in an insurance plan that was established by his employer. *See* Compl. ¶ 1; ECF No. 20 at 2; ECF No. 26-2 at 75. The plan was both administered and insured by Union Security. *See* ECF No. 26-2 at 1; *cf. id.* at 30 (requiring the policyholder to give Union Security any data "needed to

administer" the plan). Denise was Richard's sole beneficiary under the plan. *See* Compl. ¶ 4; ECF No. 26-2 at 68, 77-80; ECF No. 26-3 at 10.

Richard had basic term life insurance, additional contributory life insurance, and accidental death and dismemberment (AD&D) benefits through the plan. *See* ECF No. 26-2 at 1-34; *see also id.* at 67 (listing the amounts claimed for each type of insurance). Only the AD&D benefits are at issue in this lawsuit.

### A. The Plan

The plan required Union Security to pay AD&D benefits to an employee's designated beneficiary if the employee "die[d] as the direct result of an injury." *Id.* at 21 (emphasis omitted). But the plan excluded AD&D benefits for any loss that "result[ed] directly or indirectly from . . . [an employee's] intoxication while operating a motor vehicle." *Id.* at 21-22.

The plan defined "intoxication" as a blood-alcohol level that "exceeds the legal limit for operating a motor vehicle in the jurisdiction in which the loss occurs." *Id.* at 22. But the plan did not define the term "motor vehicle"—even though it did define the term "automobile" in a section regarding automobile-accident benefits. *See id.* at 23.

The plan recited that it was delivered in Minnesota "and governed by its laws, unless otherwise preempted by federal law." *Id.* at 1. The plan also gave Union

Security "the authority to determine eligibility for participation or benefits and to interpret the terms of the policy." *Id.* at 27 (emphasis omitted).

## B. *The Accident*

On December 4, 2015, Richard collided with a tree while operating a snowmobile. Compl. ¶ 3. He was airlifted to a hospital. ECF No. 26-3 at 24, 39. Roughly 15 minutes after he arrived at the hospital, he still had a blood-alcohol level of 0.149, which is nearly double the legal limit in Minnesota. *Id.* at 23, 39-40; Minn. Stat. § 169A.20, subd. 1b(5) (making it a crime to operate a snowmobile with a blood-alcohol level of 0.08 or more). Richard died from his injuries the following day. ECF No. 26-3 at 2, 23-37, 39.

## C. *The Claims Process*

After Richard's death, Denise filed a claim for life-insurance and AD&D benefits. A claims specialist for Union Security reviewed and approved the life-insurance claim. *See id.* at 5, 10. But the claims specialist denied Denise's AD&D claim on the grounds that the policy excluded AD&D benefits for injuries resulting from "intoxication while operating a motor vehicle." *See id.* at 10-11; ECF No. 26-4 at 53-55. Denise filed two appeals of Union Security's denial of her AD&D claim. *See* ECF No. 26-4 at 61-62, 81-82. Union Security denied both appeals. *See id.* at 69-71, 84-86.

### 1. The Initial Claim Determination

Before denying Denise's claim for AD&D benefits, the claims specialist collected Richard's medical records. ECF No. 26-3 at 12. As noted, those records showed that Richard's blood-alcohol level was almost twice the legal limit when he arrived at the hospital. The claims specialist asked a consulting physician for Union Security to review Richard's records and provide an opinion about Richard's cause of death. The doctor determined that Richard's death "was due to trauma from a motor vehicle accident" that "was directly caused by ethanol intoxication." *Id.* at 39-40.

The claims specialist then asked an in-house lawyer whether a snowmobile was a "motor vehicle" for purposes of the plan. The lawyer responded that the term "motor vehicle" should be interpreted in accordance with its plain meaning because it was not defined in the plan. ECF No. 26-4 at 52. He then opined that the plain meaning of "motor vehicle" includes a snowmobile because a snowmobile is (1) a vehicle that is (2) propelled by a motor. *Id.* He also noted that his interpretation was consistent with a Minnesota Court of Appeals decision holding that snowmobiles could be considered "motorized land vehicles" as that term was used in a different insurance policy. *Id.* Union Security's in-house lawyer conceded that "some Minnesota statutes define Motor Vehicles in a way that excludes snowmobiles." *Id.* But, he noted, those definitions were

not incorporated into the policy. *Id.* Therefore, he concluded, snowmobiles are "motor vehicles" for purposes of the policy. *Id.*

Relying on the interpretation of the in-house lawyer, the claims specialist denied Denise's AD&D claim in a letter dated May 19, 2016. *Id.* at 53-55.

### 2. Denise's First Appeal

In response, Denise hired a lawyer and appealed the denial of her AD&D claim. *Id.* at 61-62. Denise acknowledged that the plan did not define the term "motor vehicle." *Id.* But she argued that the term "motor vehicle" should be interpreted in the same way that it is defined under Minnesota traffic regulations—specifically, Minn. Stat. § 169.011, subd. 42[1] (which defines "motor vehicle" as "every vehicle which is self-propelled") and Minn. Stat. § 169.011, subd. 92 (which defines "vehicle" as a device in which a person "is or may be transported or drawn upon a highway"). Denise argued that a snowmobile could not be used to transport people "upon a highway," so a snowmobile did "not meet the definition of a motor vehicle." ECF No. 26-4 at 62.

Union Security assigned Denise's appeal to an appeals specialist. *Id.* at 64-65. The appeals specialist reviewed the plan, Richard's medical records, and Denise's appeal letter. *Id.* at 64. The appeals specialist acknowledged that some of Minnesota's traffic laws define the term "vehicle" as a device in which a person may be transported

---

[1]Denise's lawyer incorrectly cited this statute as "§ 169.01, Subd. 43." ECF No. 26-4 at 62.

"upon a highway," but she noted that the plan did not "specifically incorporate the definition of motor vehicle in the Minnesota traffic regulations." *Id.* Also, Merriam-Webster defined "motor vehicle" as "a vehicle powered by a motor." *Id.* at 64-65. The appeals specialist therefore concluded that a snowmobile was a motor vehicle and denied Denise's appeal in a letter dated July 20, 2016. *Id.* at 69-71.

### 3. Denise's Second Appeal

Denise then filed a second appeal repeating the argument that she made in her first appeal—namely, that "motor vehicle" should be interpreted as defined in Minnesota's traffic regulations. *Id.* at 81-82. In response, the same appeals specialist referred to her previous reasoning and denied Denise's second appeal in a letter dated August 16, 2016. *Id.* at 84-86. The appeals specialist also notified Denise that this denial was "the final administrative remedy," leaving Denise free to pursue a lawsuit if she was dissatisfied with Union Security's decision. *Id.* at 85.

### *D. The Lawsuit*

Having exhausted her administrative remedies, Denise sued Union Security in state court. *See* ECF No. 1-1. Union Security removed the action to federal court under 28 U.S.C. § 1331 (because Denise's claims were completely preempted by ERISA) and § 1332 (because the amount in controversy exceeded $75,000 and Denise and Union

Security were citizens of different states). *See* ECF No. 1 at 2-3. Both parties have now moved for summary judgment.

## II. ANALYSIS

The parties agree that the plan is governed by ERISA. The parties also agree that the plan gives Union Security "the authority to determine eligibility for . . . benefits and to interpret the terms of the policy." ECF No. 26-2 at 27 (emphasis omitted). Consequently, the question for the Court is not whether it would, as an original matter, interpret the term "motor vehicle" to include snowmobiles. "[W]here plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own." *Donaldson*, 863 F.3d at 1039 (quoting *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc)). The Court must defer to Union Security's interpretation as long as it is reasonable and "supported by substantial evidence." *Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 660 (8th Cir. 2017).

### A. The *Finley* Test for Reasonableness

The Eighth Circuit applies a five-factor test—known as the "*Finley* test"—in determining whether an administrator's interpretation of an ERISA plan is reasonable. The *Finley* test requires a court to consider:

> [1] whether their interpretation is consistent with the goals of the Plan, [2] whether their interpretation renders any language of the Plan meaningless or internally inconsistent, [3] whether their interpretation conflicts with the substantive or procedural

> requirements of the ERISA statute, [4] whether they have interpreted the words at issue consistently, and [5] whether their interpretation is contrary to the clear language of the Plan.

*Finley v. Special Agents Mut. Ben. Ass'n*, 957 F.2d 617, 621 (8th Cir. 1992). The Court will address each factor in turn.

First, Union Security's interpretation of "motor vehicle" is "consistent with the goals of the Plan." *Id.* To be sure, one goal of the plan was to provide an extra measure of financial security to the beneficiaries of employees who were accidentally injured or killed. But another goal of the plan was to reduce moral hazard[2]—that is, to avoid creating an incentive for employees to engage in risky or self-injurious behavior. To further the latter goal, the policy excluded AD&D coverage for injuries and death resulting from (among other things) "taking part in a riot," "a felony," "suicide or attempted suicide," "intentionally self-inflicted injury," "the [unlawful] use of any drug"—and, of course, "intoxication while operating a motor vehicle." ECF No. 26-2 at 21-22.

Operating a snowmobile while intoxicated is no less risky to the employee than operating an automobile while intoxicated. (Indeed, it may be more risky, given that

---

[2]*See* Daniel Schwarcz, *Reevaluating Standardized Insurance Policies*, 78 U. Chi. L. Rev. 1263, 1283 (2011) ("One of the central aims of insurance policies is to reduce moral hazard, or the prospect that policyholders will take less care knowing that they are insured.").

snowmobiles lack air bags and other safety features common in automobiles.) Therefore, interpreting the term "motor vehicle" to include snowmobiles is consistent with the plan's goal to reduce moral hazard.

Second, Union Security's interpretation would not make other language in the plan "meaningless or internally inconsistent." *Finley*, 957 F.2d at 621. To the contrary, Union Security's interpretation is consistent with other language in the plan. The plan provides a separate "automobile accident benefit" when "a covered person dies from an automobile accident injury while wearing a seat belt." ECF No. 26-2 at 8 (emphasis omitted).[3] The plan defines "automobile" to include only "a four-wheel car of the private passenger type including pick-up trucks and vans with a load capacity of one ton or less." *Id.* at 23. Obviously, then, the phrase "motor vehicle" is intended to include vehicles beyond those that are "four-wheel car[s] of the private passenger type." If "motor vehicle" was limited to such "car[s]," then the plan would not separately (and narrowly) define "automobile."

Third, Union Security's interpretation does not conflict with ERISA's "substantive or procedural requirements." *Finley*, 957 F.2d at 621. Denise does not argue otherwise.

---

[3]The fact that this benefit is provided only when the driver was "wearing a seat belt" is yet more evidence that a central goal of the plan is to reduce moral hazard.

Fourth, Union Security has consistently interpreted "motor vehicle" to include snowmobiles. *Id.* From the start, Union Security took the position that a snowmobile was a "motor vehicle" because it was a vehicle propelled by a motor. Union Security has maintained that position throughout the course of the administrative proceedings and this litigation. And the record does not disclose any occasion on which Union Security has interpreted the term "motor vehicle" differently.

Fifth, Union Security's interpretation is not "contrary to the clear language of the Plan." *Id.* When a plan does not define a given term, parties may consider that term's "ordinary, plain meaning," consulting the "ordinary, dictionary definition" of that term as necessary. *Spizman v. BCBSM, Inc.*, 855 F.3d 924, 927 (8th Cir. 2017) (citation omitted).

In this case, both parties can cite dictionary definitions to support their preferred interpretation of the term "motor vehicle." On one hand, some dictionaries define "motor vehicle" to refer primarily to road vehicles. For example, the American Heritage Dictionary defines "motor vehicle" as "[a] self-propelled conveyance with wheels and a motor, such as a car or truck, for use on roads." *Motor vehicle*, The American Heritage Dictionary of the English Language, www.ahdictionary.com/word/search.html?q=motor+vehicle (last visited September 11, 2018). The New Oxford American Dictionary defines "motor vehicle" as "a road vehicle powered by an internal

combustion engine" or an "automobile." *Motor vehicle*, New Oxford American Dictionary (3d ed. 2010). And Webster's Third New International Dictionary defines "motor vehicle" as "an automotive vehicle not operated on rails; *esp[ecially]*: one with rubber tires for use on highways." *Motor vehicle*, Webster's Third New International Dictionary (3d ed. 1993).

On the other hand, some dictionaries define "motor vehicle" more broadly. For example, Merriam-Webster's Learner's Dictionary defines "motor vehicle" as "a vehicle (such as a car, truck, or motorcycle) that is powered by a motor." *Motor vehicle*, Merriam-Webster's Learner's Dictionary, www.learnersdictionary.com/definition/motor%20vehicle (last visited September 11, 2018). And Random House Webster's Unabridged Dictionary defines "motor vehicle" as "an automobile, truck, bus, or similar motor-driven conveyance." *Motor vehicle*, Random House Webster's Unabridged Dictionary (2d ed. 2001). Because the plan itself does not define "motor vehicle"—and because some dictionaries define that term broadly enough to include a snowmobile— the Court cannot conclude that Union Security's interpretation is contrary to the clear language of the plan.

In sum, applying the five *Finley* factors, the Court finds that Union Security did not act unreasonably in interpreting the term "motor vehicle" to include a snowmobile.

### B. *Conflict of Interest*

Denise argues that a conflict of interest exists because Union Security is both the administrator and insurer of the plan. It is true that when "'a plan administrator holds the dual role of evaluating and paying benefits claims,' this conflict of interest should be considered 'as a factor in determining whether the plan administrator has abused its discretion.'" *Donaldson*, 863 F.3d at 1039 (citation omitted). But a conflict of interest of this type does not alter the standard of review. *Cooper*, 862 F.3d at 660 ("Our precedent . . . has consistently rejected the notion that the mere presence of a potential conflict of interest is sufficient to warrant a less deferential standard."). And a conflict of interest of this type should be given little to no weight when "the administrator has taken active steps to reduce potential bias and to promote accuracy," such as "by walling off claims administrators from those interested in firm finances." *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1053 (8th Cir. 2011) (citation omitted).

In this case, there is no evidence that Union Security's dual role as both the administrator and the insurer of the plan had any impact on its decision. Union Security's claims specialist sought guidance from two other individuals (a medical doctor and a lawyer) before denying Denise's AD&D claim. Then when Denise appealed the denial of her AD&D claim, Union Security assigned a new appeals specialist to the case, and she, too, denied Denise's claim. The record contains no hint

that any of these individuals acted in bad faith; to the contrary, all of them supported their conclusions with careful, reasonable explanations. In addition, the Eighth Circuit has previously found no indication that Union Security "has a history of biased claim decisions," and no such evidence appears in the record of this case. *Id.* Under these circumstances, any conflict of interest inherent in Union Security being both the administrator and insurer of the plan is entitled to little weight. *Donaldson*, 863 F.3d at 1039.

## C. *Applicability of Minnesota Law*

Denise also argues that Union Security's interpretation was unreasonable because the plan recited that it was delivered in Minnesota "and governed by its laws . . . ." ECF No. 26-2 at 1. Denise argues that, under this clause, "motor vehicle" must be defined as it is defined in some Minnesota statutes—definitions that are not broad enough to include a snowmobile.

There are several problems with Denise's argument:

First, even if the policy provided that "motor vehicle" should be defined for purposes of the policy as it is defined for purposes of a Minnesota law, the policy would fail to specify *which* Minnesota law. *Several* Minnesota laws define "motor vehicle," and the definitions differ in material respects. Minnesota has defined "vehicle" or "motor vehicle" relatively narrowly in the context of its vehicle-registration laws, *see* Minn. Stat.

§ 168.002, subd. 18(a); its vehicle-title statutes, *see* Minn. Stat. § 168A.01, subd. 24; its traffic regulations (which apply primarily "to the operation of vehicles upon highways," except for certain provisions that also apply to snowmobiles), *see* Minn. Stat. §§ 169.011, subds. 42, 92; 169.02, subd. 1; and its No-Fault Automobile Insurance Act, *see* Minn. Stat. § 65B.43, subd. 2. If the definitions in these statutes were controlling, they would suggest that a snowmobile should not be considered a "motor vehicle." But Minnesota has defined "motor vehicle" quite broadly in the context of its drunk-driving laws to include "every vehicle that is self-propelled," including "off-road recreational vehicles." Minn. Stat. § 169A.03, subd. 15. That definition would suggest that a snowmobile should be considered a "motor vehicle."

Second, the policy does not, in fact, provide that "motor vehicle" should be defined for purposes of the policy as it is defined for purposes of a Minnesota law. It provides instead that the policy is *governed* by Minnesota law. That simply means that *relevant* Minnesota laws—i.e., laws *that govern insurance policies*—govern this particular policy. It does not mean that *irrelevant* Minnesota laws—i.e., laws *that have nothing to do with insurance policies*—somehow "govern" this insurance policy.

Thus, even assuming that Minnesota law governs Richard's insurance policy, the statutes on which Denise relies are irrelevant because they don't say anything about how "motor vehicle" should be defined for the purpose of an AD&D policy. Instead,

those statutes define the term "motor vehicle" for *other* purposes, such as for the purpose of vehicle-registration laws, *see* Minn. Stat. § 168.002, subd. 18(a); or for the purpose of vehicle-title laws, *see* Minn. Stat. § 168A.01, subd. 24; or for the purpose of traffic regulations, *see* Minn. Stat. §§ 169.011, subds. 42, 92; 169.02, subd. 1; or for the purpose of the No-Fault Automobile Insurance Act, *see* Minn. Stat. § 65B.43, subd. 2.

Finally, and most importantly, the clause upon which Denise relies provides that Minnesota law governs "unless otherwise preempted by federal law." ECF No. 26-2 at 1. Under ERISA's preemption clause, ERISA preempts "any and all State laws" insofar as those laws relate to ERISA plans, 29 U.S.C. § 1144(a), with the exception of any state law that "regulates insurance, banking, or securities," 29 U.S.C. § 1144(b)(2)(A). Not surprisingly, Denise has not pointed to any Minnesota law "regulat[ing] insurance, banking, or securities" that dictates a definition of "motor vehicle."

Instead, Denise argues that the Minnesota doctrine of *contra proferentem* should apply and the ambiguous term "motor vehicle" should be construed against Union Security. But the Eighth Circuit has repeatedly held that a state's doctrine of *contra proferentem* "clearly affects pension plans" and "does not regulate the insurance industry." *Brewer v. Lincoln Nat. Life Ins. Co.*, 921 F.2d 150, 153 (8th Cir. 1990).[4] Instead,

---

[4]In *Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan*, 774 F.3d 1193,
(continued...)

"this rule of construction is nothing more than a specific application of general state contract principles . . . ." *Id.* Thus, "the contra insurer rule . . . is preempted by ERISA." *Id.* Under both federal law and the terms of Richard's policy, then, Minnesota's doctrine of *contra proferentem* does not apply to the construction of the term "motor vehicle."

*   *   *

For these reasons, the Court concludes that Union Security's interpretation of the term "motor vehicle" to include a snowmobile is not unreasonable and is supported by substantial evidence. Therefore, the Court grants Union Security's motion for summary judgment, denies Denise's motion for summary judgment, and dismisses Denise's complaint.

---

[4](...continued)
1197 (8th Cir. 2014), the Eighth Circuit considered an ERISA plan that, similar to Richard's, provided that it was "governed by the laws of Minnesota, when applicable and not otherwise governed by federal ERISA law." The Eighth Circuit's opinion made clear that a Minnesota statute (Minn. Stat. § 60A.082) that specifically regulated insurance was not preempted (although the Eighth Circuit found that, under the facts of the case, the statute was irrelevant). *Id.* When determining whether the administrator's interpretation of the plan was reasonable, however, the Eighth Circuit did not apply Minnesota's doctrine of *contra proferentum* (or any other Minnesota law), but instead applied the *Finley* factors. *Id.* at 1197-98.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment [ECF No. 19] is DENIED.

2. Defendant's motion for summary judgment [ECF No. 23] is GRANTED.

3. Plaintiff's complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 12, 2018                  s/Patrick J. Schiltz
                                                                  Patrick J. Schiltz
                                                                  United States District Judge